IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | : | |
| | : | ID No. 1504020148 |
| | : | In and For Kent County |
| v. | : | |
| | : | |
| MARQUIS BOYER-SMITH, | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

On this 6th day of April, 2016,  upon consideration of the Defendant's Motion For Postconviction Relief filed pursuant to Superior Court Criminal Rule 61, the State's opposition, and the record in this case, it appears that:

1.  Defendant Marquis D. Boyer-Smith (hereinafter "Boyer-Smith") pled guilty to one  count of Possession of a Firearm During the Commission of a Felony on August 6, 2015.  He seeks relief from his guilty plea because he was not placed in the Sussex Correctional Institution (hereinafter "SCI") as provided in the original Sentence Order. He remains incarcerated at James T. Vaughn Correctional Center (hereinafter "JTVCC") in its Secured Housing Unit (hereinafter "SHU").

2.  This plea was a result of a plea agreement between the State and Boyer-Smith.  It provided that "[t]he State will *recommend* (and will ask the Court to *recommend*) that the defendant serve the Level 5 portion of his sentence at S.C.I.". The sentence provided, among other things, that Boyer-Smith will serve three years of unsuspended Level V time, followed by a probationary period imposed pursuant to 11 *Del. C.* § 4202(l).

3.  The Deputy Attorney General assigned to the case also stated in open Court before the plea, with Boyer-Smith present,  that "the State is recommending and I think

the defense is going to request that the Court recommend that he serve his Level V portion of his sentence at Sussex Correctional. It's not necessarily binding on DOC . I am just respectfully asking the Court to recommend that."

4. As a result, when sentencing Boyer-Smith, the Court stated on the record that "the Court requests that the Department of Correction direct that the defendant serve the Level V portion of his sentence at Sussex Correction Institute. Also, the defendant is ordered to complete the Key Program while serving his Level V incarceration." The Court's August 6, 2015 written Sentence Order, however, *mandated* that Boyer-Smith serve the Level V Time portion of his sentence at SCI. The Sentence Order also required Boyer-Smith to complete the Key Program while at Level V. This particular inpatient drug treatment program is available only at SCI.

5. Thereafter, on August 19, 2015, the Classification Unit informed the Court by letter that because Boyer-Smith assaulted a correctional officer with a cup of urine and had received over twenty Class I write-ups, Correction policy required him to be reclassified to maximum security. Accordingly, he was classified to JTVCC's SHU since no such maximum security housing exists at SCI. Apparently unbeknownst to the attorneys and the Court at the time of the plea, the incident involving the assault on an officer occurred on July 18, 2015, which preceded the plea. Namely, Boyer-Smith was already housed at the SHU by the time of his plea.

6. After receipt of the letter and a request from the Defendant, the Court set a review of sentence for October 2, 2015. At the sentence review, both Lieutenant Mark Daum and Classification Officer Jackson provided the Department of Correction's position. Officer Jackson testified that Boyer-Smith's risk assessment score, based on numerous violations, requires that he be housed in maximum security. His violations included substance abuse with pills stuffed in a mattress, numerous incidents of

2

disrespect and threats toward correctional officers, destruction of prison property, and assault of a correctional officer. Correction policy mandates two years in maximum security for a staff assault. Boyer-Smith's position at the sentence review was limited to his argument that he has been singled out for unfair treatment by correctional staff.

7. Lieutenant Daum, who was present during the staff assault in July, also provided information to the Court. He indicated he was present in July 2015 when Boyer-Smith threw a cup of suspected urine into a uniformed officer's face. At that point, Boyer-Smith refused to leave his cell and had to be forcibly extracted. Boyer-Smith then broke the sprinkler in his cell creating a flooding incident. As a result of the review of sentence, the Court modified its sentencing order, removing the provision requiring Boyer-Smith's placement at SCI.

8. Thereafter, Boyer-Smith requested that the Court permit him to withdraw his guilty plea and he filed a motion requesting the same. Pursuant to Superior Court Criminal Rule 32(d), since Boyer-Smiths request to withdraw his guilty plea was made after sentencing, his "plea may be set aside only by motion under Rule 61." Accordingly, the Court denied that motion without prejudice for Boyer-Smith to file a Rule 61 motion seeking to withdraw the plea. Boyer-Smith thereafter filed a Rule 61 motion and the State filed a response opposed to the withdraw. At an office conference to discuss a possible hearing, defense counsel indicated that he did not believe a hearing was necessary and felt that the transcripts of the various proceedings created a sufficient record for the Court's consideration.

9. The burden of proof for withdraw of a guilty plea, pursuant to a collateral attack, is on the defendant. See *Raison v. State*, 469 A.2d 424, 425 (Del. 1983)(citing the standard for withdraw of a guilty plea pursuant to Rule 32(d)). To gain relief, the defendant must establish that his or her plea was not voluntary or was entered upon

3

misapprehension or mistake as to his or her legal rights. *Id.* The Court's decision whether to conduct an evidentiary hearing in Rule 61 motions seeking to withdraw a guilty plea is discretionary. *State v. Khan*, 2003 WL 21350336, at *3 (Del. Super. June 2, 2003). Hearings are not automatic because "a defendant's representations during the guilty plea colloquy 'pose a formidable barrier in any subsequent collateral proceedings.'" *Id.* (citation omitted). Based on the clear record in this case and also Boyer-Smith's position that a hearing is not necessary, the Court has decided the matter on the record without an evidentiary hearing.

10. In this case, Boyer-Smith, engaged in the following colloquy with the Court before entering his plea:

> *Q: And are you aware that the Court is not bound by any agreement regarding sentencing that you may have made with the State up to this point in time?*
> *A: Yes, I do.*
> *Q: Has anyone forced you or threatened you to enter into this plea?*
> *A: No*

Boyer-Smith also executed the Truth-in-Sentencing Guilty Plea Form prior to his plea. He confirmed on the record, under oath, that he understood each of the questions and answered them accurately. That form included the following relevant questions and responses:

. . .

> *Q: Have you freely and voluntarily decided to plea guilty to the charges listed in your written plea agreement?*
> *A: Yes*
> *Q: Has anyone promised you what your sentence will be?*
> *A: No.*

. . .

> *Q: Have you been promised anything not stated in your plea*

4

*agreement?*
*A: No*

The plea agreement expressly provided that SCI placement would be a recommendation. The provision in the plea agreement was consistent with the prosecution's statement on the record before the plea noting that it was a recommendation. Boyer-Smith clearly understood when he entered his plea that the Court was not bound by any recommend placement. Accordingly, it was knowing and intelligent. No one threatened or coerced him into entering the plea. It was also voluntary.

11. The original sentencing order contained mandatory language with regard to this placement. Inmate classification is a discretionary matter for the Department of Correction. *Samans v. Department of Correction*, 2015 WL 1421411, at *1 (Del. March 27, 2015). As the Delaware Supreme Court has recognized, "[i]nmates do not have a right to a particular prison classification, and 'placement of inmates within the prison system is within the wide spectrum of discretionary actions that traditionally have been the business of prison administrators, rather than of the courts." *Id.* (Citation omitted).

12. While the Court has sentencing authority to direct a placement of a particular inmate, this case is a good illustration of why such practice should be used sparingly. Department of Correction personnel have the day to day management and responsibility of running the State's prisons and ensuring the safety of their staff and the other inmates. For that reason, wide discretion for the Department of Correction is appropriate. This Court, would have been best advised in the circumstances of this case, to provide in the written sentencing order that placement at SCI was recommended rather than required. Nevertheless, it follows that if an inmate has no

5

right to a particular classification, Boyer-Smith has no right to a post-conviction remedy reversing his guilty plea because of a change in classification.

13. The Court recognizes that such placement was important to Boyer-Smith. He did not want to be housed in the SHU or at JTVCC for various reasons. Both defense counsel and the prosecutor represented in the office conference, however, that they had no knowledge of the assault on the correctional officer which occurred shortly before the plea was entered. Boyer-Smith was in maximum security at that time and hoped his sentence would provide a potential court override of Correction's decision. After considering the matter, holding the review of sentence, receiving input from DOC personnel, and considering the arguments of the parties, the removal of the provision from the sentence order was appropriate.

14. The Court is satisfied that Boyer-Smith's plea was knowing, intelligent, and voluntary. He fully understood that the Court was not bound to place him at SCI as he requested. Accordingly, his motion pursuant to Superior Court Criminal Rule 61 is **DENIED**. The Key Program is housed exclusively at SCI, and the Department of Correction indicates that Boyer-Smith will not be eligible for reclassification from maximum security until at least July 2017. Since this would not leave sufficient time to complete the Key Program, the Court will modify the sentence to change the provision regarding specific Key placement to one providing for an alternative inpatient drug treatment program while Boyer-Smith remains at Level V.

**IT IS SO ORDERED**

/s/Jeffrey J Clark
Judge

6